## CHARLEY v. NORVELL et al.

No. 14654—Opinion Filed Jan. 29, 1924.

1. **Appeal and Error—Questions of Fact— Verdict—Mortgage Foreclosure—Validity of Release.**

Where in an action to recover a sum of money alleged to be due on a promissory note and to foreclose a mortgage on certain real estate given to secure the payment of said note, the execution of an unconditional release of said mortgage is pleaded by the defendant and in effect admitted by the plaintiff in his reply, and the question of whether or not said release was supported by any consideration, and whether or not plaintiff at the time he executed said release was an incompetent person and incapable of transacting business for himself, is submitted to the jury under proper instructions, and there is evidence reasonably tending to support the verdict of the jury on both issues, the Supreme Court on appeal will not disturb such verdict.

2. **Contracts — Validity — Test of Incompetency of Party.**

Where it is sought to show that a certain contract is void because one of the parties thereto was incompetent to enter into contractual relations of any kind, the

test of the capacity to make a contract is whether the party had the ability to comprehend in a reasonable manner the nature and effect of the act in which he engaged and the business he transacted.

**3. Mortgages—Validity of Release—Incompetency of Releasor—Proof.**

To invalidate a release of a mortgage, it must appear that the party executing the release was incapable of comprehending that the effect of the release when made, executed and delivered would be to divest him of any title or lien upon the land covered by said mortgage, and to release the mortgagor from all obligations thereunder.

**4. Same—Sufficiency of Instructions.**

Record examined; and held, that the instructions given by the court to the jury fairly stated the law applicable to the case.

**5. Judgment Sustained.**

Record examined, and held, that no misconduct on the part of defendants or abuse of discretion on the part of the trial court sufficient to justify a reversal is shown.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Tulsa County;

Action by Lemuel Charley, an incompetent person, by his guardian, Vernon F. Seaman, against Norma L. Norvell et al. to foreclose a real estate mortgage. Judgment for defendants, and plaintiff appeals. Affirmed.

Robinson & Mieher, for plaintiff in error. Z. I. J. Holt, Judge.

Norvell, Goodloe & Gambill and Edward E. Harvey, for defendants in error.

Opinion by FOSTER, C. This action was commenced in the district court of Tulsa county, Okla., by Lemuel Charley, an incompetent person, by his guardian, Vernon F. Seaman, plaintiff in error, plaintiff below, against Norma L. Norvell and Woodson Norvell, defendants in error, defendants below, to recover the sum of $1,200, alleged to be due him on a promissory note, and to foreclose a mortgage covering certain real estate owned by the defendants in error in the city of Tulsa, Okla., given to secure the payment of said note.

The parties will be hereinafter referred to as they appeared in the court below.

It appears that Lemuel Charley was an enrolled full-blood Indian, who reached his majority on the first day of April, 1919; that on the 9th day of April, 1910, the defendants had executed to the Union Trust Company their promissory note of that date for the sum of $1,200, due and payable on the 9th day of July, 1910, thereafter, and

that to secure the payment of said note had executed their mortgage upon certain real estate situated in Grandview addition to the city of Tulsa, Okla., which note and mortgage had thereafter and before maturity been endorsed and transferred to the plaintiff, who was then a minor under guardianship, and who continued under guardianship until April 1, 1919, on which date the plaintiff attained the age of 21 years; that said note and mortgage had not been fully paid by the defendants prior to the date on which the plaintiff reached his majority, and on the 10th or 11th day of April, 1919, thereafter, the plaintiff executed and delivered to the defendants a release of said mortgage purporting to release the defendants from liability on said note and to discharge the real estate mentioned from the lien of said mortgage.

On the 2nd day of May, 1919, thereafter, the county court of Tulsa county adjudged Lemuel Charley to be an incompetent person and appointed Vernon F. Seaman guardian of both his person and estate.

Defendants filed their answer in which they alleged the contractual capacity of the plaintiff on the 11th day of April, 1919, and that on said date the defendants fully paid and satisfied said note and mortgage, in consideration of which the plaintiff made, executed, acknowledged, and delivered to the defendants an unconditional release of the mortgage and of the lien created thereby, and all obligation thereunder, which was duly filed for record in the office of the county clerk of Tulsa county, Okla., on the 14th day of April, 1910, and recorded in book 258, at page 300 of the mortgage records of said county.

Plaintiff filed an unverified reply in which he denied the execution of the mortgage release, and further alleged that if said release was executed by the plaintiff, it was void:

(1) Because it was given without any consideration; and,

(2) Because at the time of its execution the plaintiff was an incompetent person and therefore entirely incapable of transacting any business whatever.

Upon the issues thus framed, the cause proceeded to trial before the court and a jury and the jury rendered a verdict in favor of the defendants. From a judgment of the court based on this verdict, the plaintiff brings the cause regularly on appeal to this court.

Several specifications of error are relied upon for a reversal, but the plaintiff presents all of them under the following propo-

sitions, which we shall notice for convenience in inverse order:

(1) That the judgment of the trial court is contrary to the evidence.

(2) Contrary to the law.

(3) That the court erred in its instructions to the jury.

(4) That there was misconduct on the part of the defendants.

The reply of the plaintiff was unverified, and therefore there remained for determination by the jury the following issues of fact:

(1) Was the execution of the release supported by any consideration?

(2) Was plaintiff at the time he executed the release an incompetent person and therefore incapable of transacting business for himself?

It is sufficient to say that these issues were properly submitted to the jury which found in favor of the defendants on both of them. An examination of the record convinces us that there was evidence reasonably tending to support the verdict of the jury on both propositions, and in these circumstances, where no prejudicial errors are shown in the instructions of the court and its ruling upon law questions presented during the trial, this court will not substitute its judgment for that of the jury, and the verdict will not be disturbed on appeal.

There is testimony tending to show that the plaintiff had a fair education and that he was somewhat above the average for intelligence of members of his race of like age and that he was paid for the execution of the release the sum of $1,400 (which included another mortgage of $500), part in cash and part by professional services rendered and to be rendered by Woodson Norvell, one of the defendants, in connection with a proceeding then pending to have him declared an incompetent by the county court of Tulsa county. In the absence of fraud, inadequacy of consideration, or overreaching, neither of which was in issue under the pleadings, we think the evidence fairly supported the verdict of the jury on each proposition.

The contention that the release is invalid as a matter of law because executed at a time when proceedings were pending to adjudge the plaintiff an incompetent person is untenable. That such a release might be set aside in a proper proceeding upon a showing of fraud or other inequitable conduct does not furnish the correct rule for our guidance where the claim is that the release is void as a matter of law because executed at a time when proceedings to have the plaintiff adjudged an incompetent were pending and in advance of the judgment of the court entered subsequently in such proceeding. Nor can we agree with plaintiff that the proceeding to declare the plaintiff an incompetent was lis pendens and the judgment subsequently entered in such proceeding binding on the defendants.

The legal presumption of competency which supports the contracts of every person of full age would have a very restricted operation if the contention of plaintiff on this proposition were sustained. The legal presumption of competency must be indulged until this presumption is met and overturned by proof of contractual incapacity, and where, as here, the legal effect only of the contract is questioned, in the absence of fraud, the fact that such contract may have been made during the pendency of a proceeding to have one of the parties to the contract adjudged an incompetent has no application.

We are unable to find from an examination of the evidence any foundation for the claim that the entire $1,400 was not paid by the defendants at the time of the execution of the release, and that the defendants continued to pay a part of this amount to plaintiff after Seaman had been appointed guardian. The evidence tends to show that all of this amount was paid in cash and in legal services rendered and to be rendered the plaintiff, and the fact that a portion of the cash received was transferred to Mrs. Charley and left subject to her orders with the defendant Norvell and paid to her after the appointment of Seaman as guardian, does not establish as a matter of law either incompetency or want of consideration at the time of the execution of the release.

It is next insisted that the court erred in giving instruction No. 6, and in refusing requested instruction No. 4. Instruction No. 6 is as follows:

"You are instructed that an incompetent person as referred to in these instructions is a person who has not sufficient mental capacity to understand in a reasonable manner the nature and effect of the act which he is doing."

It is the contention of the plaintiff that the true test of incompetency in cases of the kind under consideration is whether the person alleged to be incompetent is unable to properly manage and take care of his property and would by reason thereof be likely to be deceived or imposed upon by artful or designing persons. In the cases cited by plaintiff the issue arose in a pro-

ceeding to have a guardian appointed in the county court, and this, as we understand it, is the general rule in such cases; but where, as here, it is sought to show that a certain contract is void because one of the parties thereto was incompetent to enter into contractual relations of any kind, the rule is correctly stated in the case of Miller v. Folsom, 49 Okla. 74, 149 Pac. 1183, where it is said in the second paragraph of the syllabus:

"The test of capacity to make a deed is that the grantor shall have the ability to understand the nature and effect of the act in which he is engaged and the business he is transacting. To invalidate a deed it must appear that the grantor was incapable of comprehending that the effect of the deed, when made, executed, and delivered would be to divest him of the title to the land set forth in the deed."

In the body of the opinion, the court, quoting with approval from Jones v. Thompson, 5 Del. Ch. 374, among many other authorities cited, said:

"In cases of alleged want of mental capacity, the test is whether the party had the ability to comprehend, in a reasonable manner, the nature of the affair in which he participated. This is the rule in the absence of fraud; for fraud, when present, introduces other principles. 8 C. E. Green, 511. This ability so to comprehend necessarily implies the power to understand the character, legal conditions, and effect of the act performed."

And, quoting with approval from Eaton v. Eaton, 37 N. J. Law, 108, 18 Am. Rep. 716, further said:

"The test of capacity to make an agreement or conveyance is that a man shall have the ability to understand the nature and effect of the act in which he is engaged, and the business he is transacting. He may be old; he may be enfeebled by disease; he may be irrational upon some topics —but in the absence of fraud and imposition, he may still execute a valid deed, or other disposition of his property; but if the mind be so clouded or perverted by age, disease, or affliction that he cannot comprehend the business in which he is engaging, then the writing is not his deed."

See, also, Adams Oil & Gas Co. v. Hudson et al., 55 Okla. 386, 155 Pac. 220.

It must be borne in mind that at the time the release was executed in the case at bar the plaintiff was of full age, and the presumption of contractual capacity cannot be overthrown merely by a showing that on account of his improvidence a guardian might be proper, or by the fact that a short time after the release was executed a guar-

dian was appointed by the county court on the ground of improvidence.

Plaintiff next contends that the court erred in refusing to instruct the jury that in determining the question as to competency or incompetency of the plaintiff at the time of the signing of the release of the mortgage, it should take into consideration all of the circumstances attending the transaction, including the acts and statements of the parties as well as the direct testimony of the witnesses as to competency or incompetency, and that they might consider the nature of the settlement claimed to have been made as compared with transactions made in the usual course of business between persons of ordinary mental capacity.

The cases where this rule has been applied were likewise cases in which it was sought to have a guardian appointed and not where contractual incapacity was urged as a defense to a contract. An improvident business transaction may be competent evidence in support of an application for guardianship, but in the absence of fraud or inequitable conduct in connection with the procurement of a contract, it can have no application where it is sought to defeat the contract by showing that one of the parties was incompetent to enter into it.

In such case to hold that the transaction or contract itself may be received as evidence of incompetency would be to assume the very point in dispute and impose the burden of proof at the outset upon the party relying upon the competency of the individual contracted with to show that he was at that time a competent person.

We are of the opinion that the instruction was properly refused and that the instructions as given by the court to the jury fairly stated the law as applicable to the case.

It is next contended that there was misconduct on the part of the defendants in the trial of the case in the court below. It is contended that the attorney for the defendants in his opening statements to the jury made use of certain prejudicial remarks in the presence of the jury upon certain irrelevant matters which tended to prejudice the jury against the plaintiff; that the remarks of counsel tended to impeach the act of the county court in appointing Vernon F. Seaman as guardian of the plaintiff, in that it was stated to be the result of a conspiracy on the part of some purported friends of the plaintiff to have him adjudged to be a crazy man and, by the use of whisky and other evil practices, operated as a fraud upon the court.

The record discloses that if anything prejudicial was said by counsel for defend-

ant in his opening statement, the court was extremely careful to see that no prejudicial inferences resulted from the remarks made, as appears from the following statement by the court to the jury just prior to the introduction of the testimony:

"Gentlemen of the Jury: In the opening statement of the defense there have been some statements made to which the plaintiff objects and asks to have stricken. The court is of the opinion that there are some points of that statement that were not competent; in other words, that the court will, without reciting just what they were, upon those points upon which the court refuses to permit any testimony to be introduced, those parts of the statement of counsel will not be considered by you in your consideration of this case."

An examination of the testimony reveals that in keeping with this statement to the jury the court did refuse to permit any testimony to be introduced which in any way tended to impeach the judgment of the county court in appointing Vernon F. Seaman as guardian of plaintiff. For instance, the following question was asked the plaintiff on cross-examination by the court:

"Q. Do you remember whether or not at the first hearing what Judge Williams said about whether or not he would keep you under guardianship? Mr. Robinson: That is objected to as incompetent, irrelevant and immaterial. The Court: This brings us down to the question of whether or not any of that matter was admissible. * * * The Court: All right, objection sustained."

A careful examination of the evidence discloses that at every point in the taking of the testimony where the defendants sought to question or impeach the action of the county court, the trial court intervened and excluded such testimony from consideration by the jury. Whatever may be said with reference to the prejudicial nature of counsel's remarks, in view of the statement of the court to the jury and in keeping with this statement, its action in refusing to permit any testimony that matter to be introduced, we think any prejudicial inference arising from such remarks was cured and cannot properly be urged as ground for reversal.

In no case that we have been able to find has a reversal ever resulted where it is possible to determine from the whole record that the jury could not have been prejudicially influenced. Aderhold v. Bishop, 94 Okla. 203, 221 Pac. 752.

Finding no reversible error, it follows that the judgment of the trial court should be and is hereby affirmed.

By the Court: It is so ordered.