EVANS, Ex'r, v. FIRST NAT. BANK of STILLWATER.

No. 31217. Feb. 8, 1944.

Rehearing Denied Feb. 29, 1944.

*146 P. 2d 111.*

Leon J. York, of Edmonton; Alberta, Canada, and Walter Mathews, of Cushing, for plaintiff in error.

Raymond H. Moore, of Stillwater, for defendant in error.

CORN, C. J. The original action was brought by Charles M. Evans, as guardian of Alexander Evans, incompetent, against the First National Bank of Stillwater, to annul a trust agreement which had previously been entered into between the said Alexander Evans and said bank, and to recover from the bank trust funds which it held under the trust agreement and which were being administered under its provisions.

The action is based upon the alleged incompetency of Evans to make a valid contract.

Evans died and the action was revived in the name of Charles M. Evans, as administrator of the estate of Alexander Evans, deceased.

The trial of the case resulted in a judgment for the defendant bank, and the plaintiff brings this appeal. The parties will continue to be referred to herein as plaintiff and defendant.

The record discloses that on March 11, 1940, Alexander Evans executed the trust agreement involved in this action. At that time he was 94 years of age. By the provisions of the instrument the sum of $1,325.95, which he had on deposit in the bank at the time, was transferred to the bank as trustee to be used and applied to the purposes of the trust; to wit: The trustee was directed to pay to the daughter of the settlor, Margaret E. Stout, the sum of $30 per month for the remainder of the settlor's life, commencing with the month of March, 1940; said sum to be expended in providing room and board at the home of said daughter. The trustee was directed to pay at its discretion, or on the order of said daughter, such sums as either should deem necessary for personal needs of the settlor and for medicine and medical care. On the death of the settlor the trustee was directed to pay out of the trust fund remaining not to exceed $500 for burial expenses and a headstone for the grave. If any of the trust fund remained unexpended after the payment of the above-mentioned items, such unexpended balance was directed to be paid in equal shares to five living children of settlor, and the children of one deceased child, all of whom were named in the instrument. It was further provided that if any of his heirs instituted proceedings to contest the trust or to have settlor declared incompetent, such person or persons should not share in the distribution of the fund, but that it should be distributed to those not involved in such proceedings in equal shares. The trustee was further directed in its own discretion to employ and pay counsel to defend said trust from any action at law or in equity, or to defend against any action to set aside the trust or to declare settlor incompetent to make the said trust. The compensation of the trustee was fixed at the sum of $2.50 per month plus a charge of 50 cents for each check cashed on the trust fund.

On April 18, 1940, the county court of Payne county appointed Charles M. Evans guardian of the person and estate of Alexander Evans; thereafter, on November 7, 1940, upon a trial de novo in district court of said county, the court set aside said order and appointed

Charles M. Evans and Margaret A. Stout as joint guardians. They did not immediately qualify for letters of guardianship. Letters of guardianship were issued to Margaret A. Stout on May 20, 1941, and to Charles M. Evans on May 26, 1941, but the letters to Evans did not become effective until the filing of his bond on August 9, 1941.

However, on June 9, 1941, the said Charles M. Evans, as guardian, filed in the district court his petition against the First National Bank of Stillwater, the trustee, asking to have the trust agreement set aside, and that the undistributed balance of the funds be paid to him.

On August 25, 1941, Alexander Evans died. On September 19, 1941, Charles M. Evans filed in the county court of said county his petition for letters of administration upon his deceased father's estate. On October 25, 1941, it having been made to appear to the court that said deceased left a will, the court, without notice other than given on the petition for letters of administration, admitted the will to probate and appointed Charles M. Evans, executor.

On November 22, 1941, Charles M. Evans, as executor, filed a motion to revive the action in the name of the executor and the same was granted over the objection of the defendant, who had employed counsel and was attempting to defend against these actions as directed in the trust agreement.

The defendant, trustee, filed its answer to plaintiff's petition, setting up the trust agreement and making an accounting of trust funds up to that time, showing disbursements in the aggregate sum of $939.29. This amount did not include the funeral expenses or the monument, the trustee having ceased making disbursements pending the termination of this litigation.

The issues on appeal settle down to only one proposition, to wit, the competency of the settlor to make and declare the trust.

As to the mental capacity of the settlor to make a valid contract, it appears from the testimony of the witnesses on both sides of the case that his mental capacity was greatly diminished, and that his ability to transact business generally would have been unreliable and unsafe. But it must be considered from this particular transaction and the circumstances under which it was consummated. He evidently knew that he had money in the bank and he wanted it conserved and used for his care and support. Fortunately he realized that the time had arrived when he should relieve himself of the details involved in providing for his daily necessities. He entrusted his care and keeping to one of his daughters at the modest cost of $30 per month. The trustee was bound by fixed terms in the handling of the funds, which were to be expended only for necessities. The amount to be expended for his funeral and monument was limited to a specified sum. Then the trustee was directed to distribute the unexpended balance, if any, to his children and grandchildren.

Had there been a charge of undue influence, fraud, or imposition, we would be confronted with a different question.

The test of capacity to make a contract is discussed in Charley v. Norvell et al., 97 Okla. 114, 221 P. 255; in par. 2 of the syllabus of that case is found a fair statement of the rule, as follows:

"Where it is sought to show that a certain contract is void because one of the parties thereto was incompetent to enter into contractual relations of any kind, the test of the capacity to make a contract is whether the party had the ability to comprehend in a reasonable manner the nature and effect of the act in which he engaged and the business he transacted."

We are satisfied from the record that, although his mind was enfeebled by his advanced age, he was able to understand the nature and effect of the instrument he executed.

Since the trust agreement is found to be valid, the same having been executed before the settlor was judicially declared incompetent, and by its terms irrevocable, the administrator would not be entitled to recover the trust funds in the hands of the trustee. This court held, In re Trusteeship of Vance, 102 Okla. 129, 227 P. 881, as stated in par. 1 of the syllabus, as follows:

"The title to the property in an express trust is in the trustee, and such trustee in the administration of such trust is subject to the control and supervision of a court of equity and not of the probate court."

The judgment of the trial court sustaining the validity of the trust agreement is affirmed.

GIBSON, V. C. J., and RILEY, BAYLESS, WELCH, HURST, and DAVISON, JJ., concur.