Alice W. MATTHEWS, Plaintiff in Error,

v.

ACACIA MUTUAL LIFE INSURANCE COMPANY, a corporation, Lynn A. Matthews, Executrix of the Estate of Joseph McKay Matthews, Jr., Deceased, and Mary Alice Lankford, Defendants in Error.

No. 40470.

Supreme Court of Oklahoma.

May 12, 1964.

Paul G. Darrough, Paul G. Darrough, Jr., Rex K. Travis, Oklahoma City, for plaintiff in error.

Kerr, Conn & Davis, by Wm. Walter Hentz, Oklahoma City, for defendants in error, Lynn A. Matthews, Ex'x of the Estate of Joseph McKay Matthews, Jr., Decd., and Mary Alice Lankford.

DAVISON, Justice.

The parties occupy the same relative positions in this court as they did in the lower court and will be referred to by name or as plaintiff and defendants.

Plaintiff, Alice M. Matthews, instituted this action in the lower court against Acacia Mutual Life Insurance Company, Joseph McKay Matthews, Jr., and Mary Alice Lankford, as defendants, to establish her ownership of funds due on two contracts between Acacia and plaintiff's deceased husband, Joseph M. Matthews. The contracts were created in 1938, when plaintiff's husband became an agent for Acacia, and provided for accumulation of death and retirement benefits during his employment by Acacia, which terminated with his death on June 24, 1961. Plaintiff was originally named as primary beneficiary therein and continued as such until March 7, 1961, when, at the request of her husband, and with approval of Acacia, on March 16, 1961, the above named individual defendants (only children of plaintiff and her husband) were named as primary beneficiaries of such benefits. The accrued benefits amount to approximately $14,000.

Plaintiff's suit is in the nature of an action for specific performance of an oral contract allegedly made with her husband in 1947, whereby the survivor would succeed to and own all property and insurance benefits, including the above contracts, acquired during their married life. Plaintiff also alleged that her husband was mentally incompetent on the date of the change of beneficiary on March 7, 1961, because of a brain tumor that caused his death on June 24, 1961. The defendant, Acacia, admitted the contract with plaintiff's husband, and alleged it was a stakeholder, without knowledge of the merits of plaintiff's claim.

At the close of all the evidence the trial court rendered judgment against plaintiff and adjudged the individual defendants to be the owners of all benefits under the contracts with Acacia. Two weeks after rendition of the judgment the defendant, Joseph McKay Matthews, Jr., died and the matter was revived in the name of his wife, Lynn A. Matthews, as executrix of his estate. The judgment was a general judgment with no findings of fact and conclusions of law.

Plaintiff contends the judgment is clearly against the weight of the evidence and is not supported by the evidence.

■■■■ We will first consider the proposition of whether plaintiff and her husband entered into the above described oral agreement. Plaintiff's husband will hereafter be referred to by that term or as Mr. Matthews. The testimony of plaintiff is the only evidence directly supporting her claim that such oral agreement was made. A narration of circumstances will aid in determining the existence or non-existence of the contract. Plaintiff and Mr. Matthews were married in 1920. He was 67 when he died in June, 1961. They bought a home in 1924 and it appears they acquired no other home. Plaintiff began working in 1937 and, according to her, their respective earnings continued to be about equal, but Mr. Matthews had the additional expense of promoting his insurance sales. Plaintiff testified they had financial problems until some time prior to 1947. Mr. Matthews became an active participant in amateur

photography and, according to plaintiff, "crazy about fishing." In the spring of 1947, Mr. Matthews wanted to buy an undivided interest in some property near Paden, Oklahoma, on which a lake was located. Plaintiff was strongly opposed to such purchase. Plaintiff testified as to the agreement then made as follows:

"I thought about it and finally I said, 'Well, we never would get anything out of it. It would be just a dead expense over there,' and we talked about it and finally we came to the—we talked it all over and he said, 'Well, now, we will buy it in each other's names, we will buy it in joint tenancy, so if anything happens, it will be yours,' and he said, 'You know my insurance is made to you—' "

The purchase price was $4250 and title was taken in the name of plaintiff and Mr. Matthews as joint tenants with right of survivorship. Plaintiff stated they went to the property practically every weekend and on holidays and vacations, and fished and camped out. Later they erected a one-room cabin. The title to their home was in the name of Mr. Matthews and in May, 1948, it was changed to a joint tenancy in their names. In 1954 plaintiff bought a lot in what was described as the Lake Aluma Club tract and paid for it in installments. Title was acquired in 1959 and was taken by them as joint tenants. Plaintiff testified that in her United States government employee's insurance she named Mr. Matthews as beneficiary.

Plaintiff's petition, evidence and briefs present the proposition of a contract on the part of Mr. Matthews to convey or in effect to devise to her all of his property, assets and death and retirement benefits, upon his death. The action seeks specific performance of the alleged agreement and is an action of equitable cognizance.

In Walden v. Vining, Okl., 377 P.2d 574, we stated:

"In an equitable action the Supreme Court will examine the entire record and weigh the evidence but will not reverse the trial court unless the judgment is clearly against the weight of the evidence."

In Majors v. Majors, Okl., 263 P.2d 1012, we quoted with approval as follows:

" 'A decree for specific performance will not be granted unless the evidence of the making of the contract is clear and convincing, and unless its terms, the consideration on which it was founded, and the time of its execution, are clearly established.' "

" 'Before a court of equity will specifically enforce an oral contract to devise property, the proof of the contract must be so cogent, clear, and forcible as to leave no reasonable doubt as to its terms and character.' "

It appears to us that plaintiff's testimony as to the oral agreement is not clear, cogent or forcible and that there is more than reasonable doubt as to its application to all of the property, assets and insurance of either or both plaintiff and Mr. Matthews. The immediate question at the time of the alleged oral agreement was the matter of buying an interest in the fishing property near Paden. It was agreed and title to that property was taken in joint tenancy. The evidence as to the agreement did not clearly show or establish that it was to extend to all other property and assets of the parties. Under the circumstances the fact that other acquired property and insurance benefits were arranged so that they would belong to the survivor is hardly significant. It is common knowledge that married persons often take title as joint tenants and ordinarily make their spouses beneficiaries of their insurance.

It is our conclusion that proof of the alleged contract failed to meet the requirements of the above quoted rules of law.

 We will now dispose of plaintiff's contention that Mr. Matthews was mentally incompetent on March 7, 1961, when he made his children beneficiaries of accruals under his death and retirement contracts with Acacia.

This contention must be considered in the light of certain statements by this court.

In Metropolitan Life Ins. Co. v. Plunkett, 129 Okl. 292, 264 P. 827, we stated:

"The law presumes every person sane, and casts the burden of establishing insanity on the one asserting its existence."

And in Evans v. First Nat. Bank of Stillwater, 193 Okl. 665, 146 P.2d 111, we held:

"Where it is sought to show that a certain contract is void because one of the parties thereto was incompetent to enter into contractual relations of any kind, the test of the capacity to make a contract is whether the party had the ability to comprehend in a reasonable manner the nature and effect of the act in which he engaged and the business he transacted."

It is admitted that Mr. Matthews had a brain tumor and died on June 24, 1961, two days after a brain operation. The record reflects that he was not well during 1960 and in 1961 to his death. There is extensive testimony as to his condition and actions, and it would be impractical to narrate the same in detail. Plaintiff's evidence in brief is that he became irritable; had difficulty with his car driving and had some accidents; lost the greater part of his interest in photography and in taking pictures; became angry when plaintiff cautioned him about his driving; lost or misplaced his car keys; and got lost in the familiar area of the fishing lake. There was also testimony that he had difficulty in preparing records of his insurance business and that he relied to a great extent upon an employee of Acacia. The testimony of the doctor who first saw Mr. Matthews on June 19, 1961, was that there was some doubt as to his mental competency on March 7, 1961. A mental expert testified in answer to a hypothetical question that he believed Mr. Matthews incompetent in the areas of major decision on March 7, 1961.

An equal number of witnesses, who were business, professional and socal acquaintances of Mr. Matthews, testified as to their contacts and association with him, at and prior and after the date of March 7, 1961, and stated that he was mentally competent, normal, or that they observed no evidence of mental deterioration. Two of these witnesses were medical doctors who treated Mr. Matthews for physical ailments. Dr. H testified he rendered medical services from April, 1958, to April, 1961, and that a condition of hypertension developed in 1960 with high blood pressure. Dr. H's treatments included February 9 and 24 and March 10 and 21, 1961. He testified that he believed Mr. Matthews was mentally competent during this period. Dr. D treated him in May and June, 1961, for high blood pressure and last on June 19, 1961, when he observed symptoms of aphasia, and stated that he did not regard Mr. Matthews as a mental case. Without reciting the details there was evidence that Mr. Matthews was on affectionate terms with his son and daughter (defendants), but that plaintiff had objected to the marriage of her daughter in 1947 and had scarcely, if at all, spoken to the daughter since that time. In December, 1960, it was discovered that the son had an incurable disease (Hodgkin's).

From our careful review of the entire record we are of the opinion that there was sufficient evidence that Mr. Matthews was mentally competent to comprehend the nature and effect of his act when, on March 7, 1961, he executed the instrument designating his son and daughter as beneficiaries of his death and retirement benefits. They were within that class of persons constituting the natural and normal recipients of his bounty.

In Wills v. Dissing, Okl., 356 P.2d 339, it is stated:

"The finding and decree of the trial court that cross-petitioners seeking to cancel a deed for lack of mental capacity on the part of the maker, failed to prove by a preponderance of the evidence that the maker of the deed was mentally incompetent at the time the deed was executed, will not be disturb-

ed on appeal unless the same is clearly against the weight of the evidence."

See also Duncan v. Burkdoll, 204 Okl. 574, 232 P.2d 151.

The judgment of the court is not clearly against the weight of the evidence.

In view of our conclusions on the above propositions it is not necessary that we determine the effect, if any, of the Statute of Frauds upon the oral agreement alleged by plaintiff.

Plaintiff also complains that the trial court erred in not granting her motion for new trial on the ground of newly discovered evidence. No authorities are cited in support of this contention. We have, however, carefully examined and considered the alleged newly discovered evidence and have concluded that such evidence, if true, is not such as would, or should, change the result of the trial. Saak v. Hicks, Okl., 321 P.2d 425.

Affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and JOHNSON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.