**Terry Denise VELEZ, Plaintiff-Appellant,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, and Hilda Tolson, Defendants-Appellees.**

**No. 82–1413.**

United States Court of Appeals, Tenth Circuit.

Dec. 16, 1983.

**8**

Mark E. Hammons, El Reno, Okl. (C. Elaine Hammons, El Reno, Okl., with him on briefs), for plaintiff-appellant.

Jack D. McCurdy, Oklahoma City, Okl. (Garland Bloodworth, Bloodworth & Associates, Oklahoma City, Okl., with him on brief), for defendant-appellee Hilda Tolson.

Before SETH, Chief Judge, McWILLIAMS and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This case involves a dispute over the proper beneficiary of an insurance policy on the life of Pedro Velez, who died from self-inflicted gunshot wounds on July 6, 1981. Pedro's wife, Terry Velez, was named the original beneficiary of the policy. Pedro later executed a new form, naming his sister, Hilda Tolson, as beneficiary. Terry brought this action to challenge Hilda's claim to the proceeds of the policy, on the grounds that Pedro was mentally incompetent when he executed the second form.

Jurisdiction arises under 28 U.S.C. § 1332. The Metropolitan Life Insurance Company is not a party to the action. It has paid the proceeds into court, and is awaiting the court's decision on the merits.

This cause was tried by the court. The judge held that Pedro had sufficient mental capacity to change the beneficiary of his life insurance policy.

*Facts of the Case from the Standpoint of Plaintiff-Appellant*

Pedro and Terry Velez were married on April 22, 1978. By all accounts, their marriage was stormy. During the course of their marriage he became increasingly jealous and violent toward her. In August, 1980, after he had repeatedly beaten her, held her at gunpoint, and refused to seek professional help, she left him. He found her six hours later and, in the presence of Terry's mother, held Terry down on the floor with his foot on her neck, threatening to seriously injure her. Terry returned home with him after this incident. They were separated again in March, 1981, when Terry went to visit her parents overnight. Pedro had permitted her to go, but he became angry when she was not home when he returned from work. He went to her parents' home to get her. He pointed a gun at her and her family and demanded that she come home with him. She refused to return at that time, and stayed with her parents. He came back six days later and held a shotgun to his stomach and threatened suicide unless she returned. This time she went home with him after he agreed to seek counseling. During this period Pedro filed for a divorce, but dropped the action when Terry returned.

Once in March and again in April Pedro, in company with Terry, went to Dr. Atwood, a psychologist and marital counselor. But he stopped going, and refused to go thereafter.

In May of 1981, Pedro accepted a job with the Dow Chemical Company. He filled out an enrollment card request for the life insurance that is in issue here. He named Terry as the beneficiary.

In late May of the same year, 1981, Pedro gave Terry permission to accompany her parents to Florida for a week. She called him every night and sent postcards, but he, nevertheless, became increasingly upset about her absence. On June 3, 1981, he called his sister, Hilda, and told her that Terry had left him, and that he wanted to make her, Hilda, the beneficiary on his life insurance policy.

On June 5, 1981, he filled out a new insurance form, naming Hilda as the beneficiary of his life insurance policy.

Terry returned from Florida the following day, and on that occasion Pedro listed a new set of restrictions to govern her behavior. Among them was prohibition against her wearing certain hairstyles, wearing make-up and practicing birth control. Also he told her that he intended to make his parents the beneficiaries of the insurance policy, and he wanted to see her reaction to this news.

Although he performed his job satisfactorily, he tended to work at odd hours, so that he could keep an eye on Terry. He worked in the early hours of the morning even after he was admonished by his supervisor not to do so. His supervisor testified further that on June 5, 1981, the day Pedro altered his insurance policy, he seemed confused and "wasn't making a lot of sense."

The next month was the last month of his life. During that period he ate less, slept more than usual, and continued to work at odd hours. He talked to a great extent about religion and death, and he refused to go out socially. On July 5, 1981, Terry became frightened at his behavior, and left for her parents' house.

The fact that he had changed the beneficiary on June 5 was unknown to Terry.

On July 6, 1981, Pedro destroyed everything in their house, set fire to the car and killed himself.

*The Legal Standard*

██ The Oklahoma Supreme Court has clearly articulated the standard for determining capacity to change the beneficiary of a life insurance policy:

> [T]he test of the capacity to make a contract is whether the party had the ability to comprehend in a reasonable manner the nature and effect of the act in which he engaged and the business he transacted.

*Matthews v. Acacia Mutual Life Ins. Co.,* 392 P.2d 369, 373 (Okl.1964) (quoting *Evans v. First National Bank of Stillwater,* 193 Okl. 665, 146 P.2d 111 (1944)). Thus, the court must look to the circumstances surrounding the change of beneficiary, and the insured's mental state at the time of contracting.

The ability of a contracting party to reasonably comprehend the nature and effect of his or her actions may be impaired if that party suffers from schizophrenia and has an insane delusion with respect to the subject matter of the contract. Borrowed from the law of wills [1] the insane delusion doctrine recognizes that an individual may not act competently when irrationally convinced of facts not supported by reality. Under the law of Oklahoma:

> An insane delusion may exist notwithstanding full mental capacity in other respects and the test as to validity of a will when contested upon the ground that testator was laboring under an insane delusion is not whether the testator had general testamentary capacity, but whether an insane delusion materially affected the will. An insane delusion is a belief in things which do not exist, and which no rational mind would believe to exist.

*Winn v. Dolezal,* 355 P.2d 859, 861 (Okl. 1960). *In re Elston's Estate,* 262 P.2d 148 (Okl.1953), however, holds that even illogical reasoning based upon existing facts precluded a finding of an insane delusion.

Plaintiff below urged that Pedro Velez suffered from paranoid schizophrenia, that

---

1. Although the designation of an insurance beneficiary is primarily a contractual act, it also disposes of property after the insured's death and has characteristics in common with a will. Thus the analogy to the law of wills is particularly appropriate in this case.

he suffered from an insane delusion that Terry had left him on June 5, 1981 and that the marriage had ended. This was when he changed the beneficiary of his insurance policy. Nevertheless, after hearing the evidence, the district court found that Pedro Velez was competent to change the beneficiary of his life insurance. The court rejected the post-mortem evaluations of plaintiff's experts that Pedro suffered from paranoid schizophrenia. The court also rejected the plaintiff's argument that Pedro changed the beneficiary of the insurance policy because he suffered an insane delusion that Terry would leave him. The trial judge found that the delusion was sufficiently coincidental with fact to render it "legally insufficient to hold Pedro Velez incompetent to change the beneficiary on his insurance policy." Finally, the court found that Pedro's behavior was sufficiently reasonable on June 5, 1981 to render him competent to change the beneficiary of his insurance.

■ The factual determinations of the trial judge are entitled to great deference. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Fed.R.Civ.P. 52(a). A circuit court may find a trial judge's factual finding clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Milgo Electronic v. United Business Communications, Inc.,* 623 F.2d 645, 662 (10th Cir.1980). This court will not merely substitute its view of the facts for the reasonable conclusions of the trial judge, who had an opportunity to view the demeanor of the witnesses.

■ Although the record clearly demonstrates that Pedro was a deeply troubled man, we cannot conclude that the trial judge erroneously rejected the testimony of the plaintiff's expert witnesses. Post-mortem diagnoses are inherently speculative,

and only the trial judge can evaluate the credibility of the diagnosing experts.

■ Nor can we find clear error in the trial judge's rejection of plaintiff's claim that Pedro suffered an insane delusion that Terry had departed permanently. There was, in fact, little of the marriage remaining, and the trial court did not act without evidence or sufficient evidence to support the conclusion that Pedro had a basis for and understood the act of changing the beneficiary. This was what he wished to accomplish. The standard here is not one of reasonableness. The law is harsh to those in Terry's position; even illogical reasoning based on an existing fact will defeat a claim of insane delusion.

If we could evaluate anew the evidence of Pedro's behavior on June 5, 1981, the date of the beneficiary change, we might reach a different conclusion than that reached by the trial judge. We may not, however, substitute our view of the facts for that of the trial judge. The testimony showed that Pedro had lucid moments and irrational moments. Although we might believe his behavior on June 5, 1981 suggested he was irrational at that time, we cannot say it is clearly erroneous to find otherwise. Pedro did perform his work satisfactorily, and did exercise options in signing his insurance form. The Oklahoma standard of capacity is not a strict standard. Although Pedro acted strangely on June 5, the trial judge could have found that he was sufficiently rational to understand the "nature and effect of the acts in which he engaged and the business he transacted." *Matthews v. Acacia Mut. Life Ins. Co., supra.*

In the latter part of his life, Pedro made life difficult for Terry. There is little question that he acted vindictively in obliterating her as the beneficiary of his life insurance policy. We sympathize with Terry's plight, but can do nothing for her. The law of Oklahoma is clear in this case, and perhaps the equities are on the side of Terry. Yet, we cannot review the evidence *de novo.* Nor can we deviate from Oklahoma law. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The decision of the trial court is affirmed.