### WHEELER et al. v. WADE et al.

No. 25337. May 21, 1935.

King & Crawford, for plaintiffs in error.

D. H. Linebaugh, W. E. Crabtree, and John H. Fryer, for defendants in error.

CORN, J. This is an appeal from the judgment of the district court of Pontotoc county, denying the contest, after probate, of the last will and testament of George Wade, full-blood Chickasaw Indian. On January 3, 1933, the county court of Pontotoc county admitted the will in question to probate. On April 8, 1933, James Wheeler, individually, and Crable Wheeler, Rolie Wheeler, and Melvin Wheeler, minors, by their guardian, W. L. Wheeler, filed their petition of contest of said will after probate. An answer and response was duly filed to said petition by the principal legatees and by the administrator with will annexed. The county court, after hearing the evidence presented upon the issues, denied the contest, sustained the will, and admitted it to probate. The contestants thereupon appealed to the district court, which court, upon a trial de novo, on the 7th day of October, 1933, overruled and denied the contest, after probate, of said will of the deceased. The contestants appeal to this court.

The parties will be referred to as they appeared in the trial court.

The material facts as disclosed by the record are in part, as follows: That on December 8, 1932, George Wade, a full-blood Chickasaw Indian, died in Pontotoc county, seized and possessed of an estate of certain lands and of approximately $100,000 deposited with the Indian department. George Wade was an elderly man who could not speak the English language very well. About 8:30, p. m. on October 4, 1930, George Wade, now deceased, signed the instrument purporting to be his will. There was named in such will as his principal legatee, his wife, Minnie Wade, and his two sons, George Wade, Jr., and Clarence Wade, and to his grandchildren, the plaintiffs, he bequeathed the sum of $25 each. The plaintiffs are the children of Eliza Wade Wheeler, a deceased daughter of the testator. On the 3rd day of October, 1930, George Wade, the testator. suffering from excessive drinking, was admitted to Breco's Hospital at Ada, where he was confined until the 12th day of October. The hospital charts disclose that drugs were administered to him from the time he was received to the last day he was there.

On the 4th day of October, George Wade, Jr., and Clarence Wade and Bill Leslie went to the office of Brunson & Kemp,

attorneys in the city of Ada, for the purpose of having a will prepared for the aged father of George Wade, Jr., and Clarence Wade.

All of the information which the attorneys received with reference to the preparation of the will of the testator was obtained exclusively from these parties. After the will was prepared it was delivered to one of the parties, who took it to the hospital, where it was signed by mark and signature. After its execution the will was deposited in the office of the court clerk of Pontotoc county. The will in question contains no unusual provisions and names George Wade, Jr., executor. All the property of the testator, both real and personal, is devised and bequeathed to Minnie Wade, George Wade, Jr., and Clarence Wade, except the sum of $25 to each of the plaintiffs.

The testator died on the 8th day of December, 1932, and on the 14th day of December, 1932, the will was presented for probate. On the 23rd day of December, 1932, the plaintiffs filed their contest of will before probate. Thereupon, a' purported agreement was entered into between the principal legatees and contestants, as settlement of the matter of contest. The terms of the purported agreement were that the children of the deceased daughter of the testator should participate in the estate to the extent of approximately one-fourth thereof, except as to certain personal property and some land.

On the 3rd day of January, 1933, the petition for the probate of the will came on for hearing, and during this hearing the contestants withdrew their contest of the probate of the will, and the county court entered its order admitting the will to probate.

The attempted settlement between the heirs was never consummated, and on the 8th day of April, 1933, these plaintiffs filed their verified petition of contest after probate. One of the grounds of contest is that fraud was perpetrated upon them in that the principal legatees allured them in believing that they would be permitted to participate in the estate to the extent of an undivided one-fourth interest after the will was probated; however, after the time to appeal therefrom had expired, the major legatees refused, as disclosed by the evidence, to carry out the agreement. Responses were filed, and on the issues framed the matter was tried. The county court denied the contest, and the contestants appealed to the district court, which denied the contest. Three of the contestants are minors.

The first question which presents itself for consideration is whether or not the petition of contest contains allegations to give the court jurisdiction to hear the matters so presented.

Section 1110, O. S. 1931, prescribes the necessary allegations of a petition to contest a will after probate. Bearing in mind that three of the contestants are minors, and that section 1110, supra, must be construed with section 1116, O. S. 1931, as decided in the case of Scott et al. v. McGirth, 41 Okla. 520, 139 P. 519, an examination of the petition discloses that it complies with the requirements of the foregoing statute, and is sufficient to invoke the jurisdiction of the court.

The plaintiffs argue in their brief that the testator was not competent to make a will and that the same was obtained by duress, coercion, undue influence, and fraud.

Dr. Breco, referring to the testator's condition on the date of the execution of the will, testified that George Wade had been given so much morphine, strychnine, and other drugs that his mind was clear only at intervals. The rest of the time he was so doped that his mind could not grasp anything.

Clarence Wade, son of the testator, testified that his father was in a normal condition when he signed and put his thumb mark on the will, and that he did not in any way seek to influence his father against his will or judgment as to the disposition he should make of his property.

John Williamson and Cudahy Allison, the subscribing witnesses, both testified that they and Clarence Wade were present when the will was read to George Wade at the Breco's Hospital; that at that time Mr. Wade was in a normal condition, and signed the instrument which he declared to be his last will and testament, which they witnessed and signed at his request and in his presence.

In addition to the facts above set forth, the record discloses that Tal Crawford, county judge, two days after the will was executed, and after it had been presented to him, took the same and went to the hospital and had a talk with the deceased wherein he explained to said deceased the terms of the will, and that he was requested by George Wade to file the same. Under the record in this case, it discloses that the testator on the day the will was executed

was in a stupor or sleepy condition on account of drugs administered to him by the doctor or hospital attendants, as shown by a part of the doctor's testimony, and at times to be in a normal condition, as disclosed by another portion of the doctor's testimony. No witness for the plaintiff testified as to the condition of the testator with reference to his condition at the exact time the will was executed. Dr. Breco's evidence is the strongest evidence submitted tending to show that the testator was not in a condition to make a will, and the testimony of the nurses also shows that he had taken considerable narcotic stimulants, such as to affect his condition, but neither of them testified as to his condition at the exact time the will was executed.

Against the evidence of the doctor and nurses is the evidence of Clarence Wade, son of said deceased, John Williamson and Cudahy Allison, that he appeared to be in a normal condition at the particular time when he executed the will, and the testimony of the doctor and the nurses was generally and largely from the charts that had been made. In addition to this evidence which is conflicting there are material facts which must be given serious consideration: Two days after the will was executed the county judge visited the testator and explained to him the part of the will that made distribution of the estate, and after explaining that to the testator, he acknowledged it as his will and asked to have it approved; that the further fact that the will remained for more than two years before his death, and that he went to the Indian Agency at Muskogee and made some statements to Mr. Finley, the Indian Agent, to the effect that he desired to change the will, which in a way admits that he had made a will, but the effect of that evidence is that he had a will and desired to make some changes in it.

The fact that he wanted to make changes in it did not show that it was not his will unless he made another will revoking and changing it, which he never did. There were one or two other occasions where he gave expression to a similar thought; however, he never did revoke the will, never did the thing that would set aside the will, that is, make a new one. After the will was once made, even though he changed his mind and desired some changes in the will, it would, nevertheless, continue to be his will until he did that act, and that act he never did.

The effect of his statements to Mr. Finley, the Indian Agent, that he wanted to make some changes, is rather in favor of supporting the will than of defeating it.

Undue influence such as will invalidate a will must be something which destroys the free agency of the testator at the time when the instrument is made, and which, in effect, substitutes the will of another for that of the testator. It is not sufficient that the testator was influenced by the beneficiaries in the ordinary affairs of life, or that he was surrounded by them and in confidential relation with them at the time of its execution. Mere general influence, not brought to bear on the testamentary act, is not undue influence; but in order to constitute undue influence, it must be used directly to procure the will, and must amount to coercion destroying the free agency of the testator. Mere suspicion that undue influence was brought to bear is not sufficient to justify the setting aside of the will.

The fact that George Wade lived at home with his wife and children for more than two years after making the will without revoking it is a strong circumstance that the same was not executed by duress and fraud or undue influence.

The plaintiffs seem to rely on the surmise that George Wade did not have testamentary capacity at the exact time he executed the will. They do not contend that generally he was without testamentary capacity. To take the evidence as a whole, the testator, on the night of the 4th of October, was at the hospital recovering from a drunk, and was in such a condition that there were some doubts of his recovery, but, as testified to by Dr. Breco, when Mr. Wade's attention was attracted and his interest was aroused, he would wake up and be perfectly normal, but when he became drowsy and his interest died, he would drop off again and refuse to talk. The testimony shows that he talked intelligently with the boys at the time he made his will, and several times during the course of the evening he woke up and carried on an intelligent conversation. If, at the time he executed the will, he knew what disposition he was making of his property, he had testamentary capacity, and the witnesses for the defendants so testified, and the same was taken as true by the county judge and the district judge.

We are, therefore, of the opinion that the

judgment of the trial court should be, and is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS and PHELPS, JJ., concur.