In re ROBERTSON'S ESTATE.
ROBERTSON v. ROBERTSON.

No. 32950.   Jan. 13, 1948.

Rehearing Denied Feb. 10, 1948.

*189 P. 2d 615.*

Roy W. Cox and Charles C. Buhrman, both of Blackwell, for plaintiff in error.

Elmer S. Rutherford and Clyde Heltzel, both of Tonkawa, and Irving D. Ross and David Ross, both of Newkirk, for defendant in error.

RILEY, J.   This appeal grows out of the offer to probate the will of Doctor John Q. Robertson, deceased, by his widow, Ethel Robertson, in the county court of Kay county.  Petition for probate of the instrument in contest was filed in the county court of Kay county by Ethel Robertson, widow of deceased. The persons named in the petition for probate, as the heirs, devisees, and legatees of decedent, were Dean Robertson, Helen Pope, Mabel Caldwell, and Ethel Robertson.

An order was entered December 15, 1943, admitting the instrument to probate, as the last will of John Q. Robertson, deceased, and Ethel Robertson, the

person named in the will, was appointed executrix. She qualified and proceeded with the administration of the estate until about January 24, 1946, at which time she presented her final account and petition for distribution under the will. The final account and petition for distribution was set for hearing February 15, 1946, and was continued to March 2, 1946. On that date, Dean Robertson filed his petition to revoke the probate of the will and contesting said will.

The verified petition to revoke the probate of the will was based upon the allegations that he was a son and heir of John Q. Robertson, deceased, and that he, Dean Robertson, at the time said instrument was presented for and admitted to probate, was a person in the military service of the United States and was entitled to the benefits and special protection prescribed by the Soldiers' and Sailors' Civil Relief Act, among which is the right to have a default judgment rendered against him, without the appointment of some proper person to be attorney for him, set aside as provided in said act.

The contest of the probate of the will alleges, in substance, that at the time said instrument was executed and attested, said John Q. Robertson was not competent to make a last will and testament because of insanity, unsoundness of mind, and delusions, and that at and prior to the time said purported will was executed, and thereafter until the time of his death, said John Q. Robertson was under duress and undue influence of Ethel Robertson, his wife.

Upon hearing in the county court, an order was entered revoking the probate of the will. The county court found and held that the will of John Q. Robertson was the product of an hallucination that he had no children, and was therefore not a valid instrument disposing of his property. The county court found and held that there was no undue influence. Distribution of the estate under the will was denied

and the executrix, Ethel Robertson, was directed to qualify as administratrix and close, settle, and distribute the estate under the laws of descent and distribution. Ethel Robertson appealed to the district court upon questions of law and fact. Upon hearing therein, the district court held and found that there was no evidence of undue influence and:

"The court does not find from the greater weight of the evidence in this case that the testator, John Q. Robertson, was suffering from or was in fact under an insane or unnatural delusion or hallucination that he was not the father of his two children or that they were not his children, nor did he in fact attempt to disinherit them by his will."

Judgment and decree of the district court was that testator was in fact competent to make the will and had the mental capacity so to do, and that the will is a valid, lawful and binding will, and the matter was remanded to the county court for final disposition under the will; and contestant appeals.

There is no contention that the finding of the trial court on the question of duress or undue influence is erroneous. It is earnestly contended that the finding of the district court that deceased, John Q. Robertson, was not suffering from or under an insane or unfounded delusion that he was not the father of the two children, Dean Robertson and Helen Pope, nee Robertson, is contrary to and against the weight of the evidence.

The record discloses that at the time the will was executed by John Q. Robertson, he was a man about 77 years of age and had been for many years until a few months before his death, a dentist practicing in Tonkawa, Okla. He had been married four times, his fourth wife being the proponent and chief beneficiary under the will. As a young man, living at Pratt, Kan., he was married to his first wife, Elizabeth Adams, about October 30, 1892. To that union, two children, Dean Rob-

ertson, a son, and Helen Robertson, a daughter, were born. The son was born in Kansas City, Mo., in 1897. Sometime about September, 1903, the family moved to Tonkawa, Okla. About August, 1904, the daughter, Helen, was born in Tonkawa. Sometime during World War One the family moved to Oklahoma City. At that time, Dean, the son, was in the armed service.

While in Oklahoma City, John Q. and Elizabeth separated and John Q. returned to Tonkawa. About September, 1922, John Q. Robertson filed suit for divorce from his then wife, Elizabeth. In his petition for divorce, he alleged that the children were adults. Shortly thereafter a decree of divorce was granted. Some two or three years thereafter, John Q. Robertson married his second wife who was killed in an automobile accident in 1927. About two years later he married his third wife who died in 1940.

July 29, 1943, John Q. Robertson married proponent, and on or about August 9, 1943, he wrote and dated the will here involved, and on August 12, 1943, he took the same to a bank in Tonkawa where it was witnessed by three subscribing witnesses. On October 26, 1943, decedent committed suicide by shooting himself with a shotgun.

The evidence shows that John Q. Robertson wrote the will in his own handwriting, at his home. The attesting witnesses testified that John Q. Robertson signed the instrument in their presence, at the bank, on the latter day. The preamble of the will is in the usual form. It then provides:

"First I direct the payment of all my just debts and funeral expenses.

"(2) All my property both real and personal of every kind wherever situated, whether vested or contingent at the time of my death, I devise and bequeath to my beloved wife, Ethel Robertson with full power to lease mortgage or sell.

"(3) I give devise and bequeath each Dean Robertson and Helen Pope Five & No/100 Dollars.

"(4) I declare that I have no children that I have no deceased children, and that in event any person shall legally prove themselves to be my children, and that in event any person shall legally prove themselves to be my children I leave them the sum of One Dollar.

"(5) I appoint my wife Ethel Robertson sole executrix without bond of my last will & testament."

The controversy arises over the provisions of paragraphs numbered (3) and (4) above quoted.

On the question of mental capacity generally, aside from the question of whether Dean Robertson and Helen Pope were his children, the findings of the trial court cannot be said to be against the clear weight of the evidence.

However, there is expert, or medical, testimony going to the competency of testator to make a will, and it may fairly be said that this evidence is about equally balanced. There is also testimony of lay witnesses.

The principal contention of contestant is that the part of the will last above quoted was the product of an insane delusion or hallucination on the part of John Q. Robertson that he had no children, that is, that Dean Robertson and Helen Pope were not his children. Notwithstanding the flat declaration to the contrary in the will, the record in this case conclusively shows that contestant, Dean Robertson, was the son of testator, John Q. Robertson, and that Helen Pope, nee Robertson, was his daughter. The county court and district court both so found. There is no escape from that finding under the evidence.

The general rule appears to be that:

"An insane delusion that testator's children are not his own will avoid a will induced thereby which disinherits

the children." 1 Page on Wills (Lifetime Ed.) 308, §158.

It is also said:

"No will can stand that is induced by an insane delusion concerning anyone who, but for such a will, would succeed to the property, either by virtue of a former will or by intestate succession; and it is for this class of delusions that wills are most frequently assailed.

"For example, the will is avoided by a mere insane hatred for the person prejudiced by such hatred, or by the insane belief of any prejudicial thing concerning him or her that she was not his child, that she was a prostitute, or that the testatrix had been wronged by her children." Rood, Wills (2nd Ed.) 102, §137.

In re Klein's Estate, Redhead v. Lang et al. (Wash.) 183 P. 2d 518, is a late case in which the authorities are reviewed somewhat at length. Therein it is held:

"The test as to validity of will executed by testator, laboring under insane delusion, is not whether testator had general testamentary capacity, but whether insane delusion materially affected the will."

And:

"An 'insane delusion', within rule invalidating will, denotes a false belief, which would be incredible in the same circumstance to victim thereof were he of sound mind and from which he cannot be dissuaded by any evidence or argument."

And:

"Evidence warranted revocation of will on ground that testatrix was laboring under insane delusion, which was without foundation in fact, that her only daughter had attempted to poison testatrix to secure testatrix's property, and that such delusion materially affected will excluding daughter."

In re Russell's Estate (Cal.) 210 P. 249, holds:

"Where for over 40 years a testator entertained no belief or suspicion that the contestant was not his daughter, such belief, thereafter first appearing without any fact, circumstance, or evidence then transpiring to justify it, can only be ascribed to a diseased mind, especially where there are other circumstances indicating mental derangement."

In Davis v. Davis (Colo.) 170 P. 208, a judgment denying the will to probate was upheld where the ground of contest was the same as here. There the will, so far as it affected the contestant, though it named him as "my boy John Davis", gave him $10. It was there held that the will was the result of an insane delusion that the contestant, John Davis, was not the son of testator. Therein it is said:

"Under this state of facts the jury was justified in finding that there was no rational basis for the declarations of Davis that John was not his own child, and that these declarations were the result of an insane delusion. Indeed, there does not appear to have been any circumstances or occurrences as between the testator and his son John that to a rational mind would in any sense serve as a reason for disinheritance."

In the instant case there appears to be no rational basis whatever for the declaration contained in the will that testator had no children. If he believed that declaration to be true, it must have been the result of a delusion. That testator did believe the declaration to be true is evidenced by the fact that he put that solemn declaration in the instrument itself. There is also evidence that he made declarations to the same effect as far back as 1940 and it appears that he made the same declarations after his marriage to Ethel and shortly before he wrote the will.

We deem it unnecessary to review the evidence at length concerning the parentage of the two children. All the evidence is that Dean Robertson and Helen Pope are the children of the marriage between testator and his first wife, Elizabeth. The birth certificate of Dean Robertson was introduced in

evidence. It is a delayed birth certificate but it was filed in the office of the State Board of Health of the State of Missouri, the Bureau of Vital Statistics, on September 1, 1942, about one year before John Q. Robertson married proponent and more than three years before this controversy arose. It lists the birth name as Dean Robertson; the date of birth, February 7, 1897; color, white; sex, male; birth place, Kansas City, Missouri; father's full name, John Quinn Robertson; mother's maiden name, Elizabeth Wentworth Adams. Having been issued long before this controversy arose, it cannot be said to have been made or obtained for the purpose of this case. Beside that, all the other evidence was conclusively to the effect that Dean Robertson is the son of testator, John Q. Robertson.

The evidence as to the parentage of Helen Pope, nee Robertson, is even more conclusion, if possible.

From the record as a whole, it appears that John Q. Robertson, at the time he wrote the purported will and signed same, some three years before was suffering from an insane delusion that. Dean and Helen were not his children. This appears to be the only basis of the provisions of the will as to them. We hold that the findings and decree of the district court on that question are against the clear weight of the evidence.

Reversed and remanded for further proceedings in accordance with the findings and judgment of the county court.

HURST, C.J., and BAYLESS, WELCH, GIBSON, CORN, and LUTTRELL, JJ., concur. DAVISON, V.C.J., and ARNOLD, J., dissent.