Merritt C. MASON, Executor; Hannah Winters, Charles Wagner, Ida White and John Koppitz, Administrator of the Estate of Marie (Mary) Koppitz, Deceased (in lieu of John Koppitz, as Guardian of Marie Koppitz, an Incompetent Person), Proponents, Plaintiffs in Error,

v.

George MOHS, Guardian of Caroline Schroeder, an Incompetent Person; and W. W. Wagner, et al., Contestants, Defendants in Error.

No. 36113.

Supreme Court of Oklahoma.

June 7, 1955.

Rehearing Denied July 5, 1955.

V. P. Crowe, Val R. Miiler, Embry, Johnson, Crowe, Tolbert & Boxley, Oklahoma City, Mauntel & Doolin, C. E. Wilhite, Alva, Elam & Crowley, Enid, for plaintiffs in error.

Charles Hill Johns and Gomer Smith, Jr., Oklahoma City, Hadwiger & Hadwiger, Alva, for defendants in error.

WELCH, Justice.

After order of County Court admitting the will of Theodore Wagner to probate, a

contest was filed by George Mohs, guardian of Caroline Schroeder, an incompetent (a sister of Theodore Wagner, deceased), and W. W. Wagner, a nephew of Theodore Wagner. Contestants alleged that Theodore Wagner was incompetent to make a will, and that the purported will was void for lack of proper execution, and that the material facts as set forth in their pleading were discovered after admission of the will to probate.

Decision of the county court was adverse to the contestants, and the contestants perfected an appeal to the district court. Upon trial de novo in the district court, judgment was entered for the contestants, that the will in controversy be denied probate. The trial court made and entered findings of fact and conclusions of law to the effect that there was a lack of testamentary capacity on the part of Theodore Wagner at the time of execution of the will in controversy, and that there was a lack of due execution, publication and attestation of such purported will.

The proponents of the will, Merritt C. Mason, as executor and Hannah Winters and others as beneficiaries, under the will, bring this appeal.

Proponents contend the trial court's findings of fact and conclusions of law, as to the incompetency of Theodore Wagner to make and execute the will, and as to the will not being properly executed, are contrary to the clear weight of the evidence.

The instrument in controversy was signed May 5, 1951, and Theodore Wagner died July 19, 1951. He was then past 80 years of age. In 1948 he suffered a cerebral hemorrhage and became partially paralyzed. He later improved, but from the fall of 1950 until his demise his condition had grown such that he was generally confined to his home and bed, and for several months prior to May 5, 1951, he was never dressed in street clothes, but was always clad in bed-clothes.

Mrs. Delza Roots was employed as a practical nurse in the home of Theodore Wagner in 1948, and remained in that capacity in attendance as day duty nurse for Theodore Wagner until his death in July, 1951.

According to the testimony of Mrs. Delza Roots, on the morning of May 5, 1951, C. H. Mauntel, a lawyer, by telephone made request to see Theodore Wagner. About 1:30 p. m. Mr. Mauntel came to the Wagner home where Mr. Wagner was in bed. Mauntel visited Wagner in the bedroom about twenty minutes, and then left the Wagner home. On the same day about 4 p. m. Mauntel, by telephone, asked Mrs. Roots to stay at the home until 6 p. m. About 5:45 p. m. Mrs. Laura Mae Holtom, then Laura Mae Kassick, the night nurse, arrived at the Wagner home. About 6 p. m. C. H. Mauntel and Dr. D. B. Ensor came into the kitchen in the Wagner home. Mr. Mauntel requested that Mr. Wagner be brought into the kitchen. Mr. Wagner was too weak to walk; too weak to get out of bed alone, and the witness and Mrs. Holtom, one each side of him, helped him out to the kitchen, and put him in a chair. Mr. Mauntel took some papers out of his pocket, (the instrument here involved), Mr. Mauntel laid these papers down on a table in front of Mr. Wagner. Mr. Wagner just sat there and stared off into space a few minutes. Mr. Mauntel gave him a pen and he sat there and looked at the paper quite a while and finally he signed his name. Doctor Ensor then signed and Mrs. Holtom, who was then Mrs. Kassick, signed it, and the witness signed it. No words were spoken by Mr. Mauntel or Mr. Wagner in the kitchen until after the signatures were placed on the instrument, and then only in the German language which the witness did not understand. After the signing Mr. Mauntel put the paper in his pocket and he and Dr. Ensor left the Wagner home. Mr. Wagner did not have on his glasses on the occasion in the kitchen, and could not read without his glasses. The witness and Mrs. Holtom and Dr. Ensor did not read any part of the document they signed, nor was any part thereof read aloud in their presence.

Mrs. Holtom and Dr. Ensor each gave testimony in accord with the above testi-

mony concerning the events that occurred in the Wagner kitchen on May 5, 1951.

Dr. Ensor, who had served as Mr. Wagner's family doctor for fifteen years, testified that he had observed and noted an increasing senility of Mr. Wagner during the last six months of his life and, a progressive, very progressive degeneration affecting his physical and mental capacity in that period. Based on his said observations of Theodore Wagner, the doctor expressed an opinion that Theodore Wagner on May 5, 1951, was without sufficient mental capacity to know and understand the nature and extent of his property, to know the natural objects of his bounty, and to know and understand the effects and consequences of his acts.

Delza Roots testified concerning her observation of and experiences with Theodore Wagner in her capacity as a practical nurse in the Wagner home in the period from January, 1948, until he died in July, 1951. The witness expressed a like opinion of incompetency of Theodore Wagner on May 5, 1951, as that stated by Dr. Ensor.

C. H. Mauntel testified he had served Mr. Wagner as a lawyer since about 1937, and up until July, 1950, had seen and talked to him frequently. On May 4, 1951, the witness was told that Wagner wanted to see him. On May 5, 1951, the witness went to the home of Wagner and there Wagner discussed and described his property and relatives and gave the witness instructions as to the preparation of a will. The witness left Wagner and had the will prepared. He then called Dr. Ensor and arranged to meet him. They went to the Wagner home and to Mr. Wagner's bedside where at Wagner's request the witness read the instrument he had prepared as a will and had brought there. The doctor left the room before the reading was finished. At the close of the reading Wagner stated he wanted to sign the will on the kitchen table. After Wagner was brought to the kitchen the witness laid the instrument before him and stated it was the will read in the bedroom, and the witness asked Wagner if he wanted to sign it as his last will and testament and have the others then present, the doctor, Mrs. Roots and Mrs. Holtom, attest it as witnesses. Wagner said yes, and nodded his head, and then signed and the others signed. The witness then asked Wagner if that was his last will and testament, and Wagner said it was what he wanted. The witness and the doctor then left the kitchen and the premises after a brief conversation spoken in German between the witness and Wagner. The witness retained the instrument until it was put in the Alva State Bank, where it remained until after Wagner's death.

The witness Mauntel stated his opinion that Wagner, on the said occasion, understood the nature and extent of his property and his relationship with others, and the nature and contents of the instrument and was qualified to make a will.

Other witnesses called by the proponents testified concerning their various business and social calls on Mr. Wagner at various times before and after May 5, 1951, and up to July, 1951, and each on a basis of such conversations or dealings and their observations of him, stated an opinion that he was on May 5, 1951, possessed of mental capacity to know his property and relationship with others, and the nature of an instrument which would dispose of his property by will.

■ The question of testamentary capacity is a question of fact. The test of testamentary capacity is the testator's capacity to understand the effect and consequences of his act at the time the will is executed. In re Felgar's Estate, 207 Okl. 310, 249 P.2d 455, and cases therein cited.

Herein, with the testimony of Dr. Ensor and Mrs. Roots given full weight and credit, it is made to appear that Theodore Wagner was without mental capacity to know and understand the nature and consequences of his acts at the time the will in question was signed on May 5, 1951, and that at such time there was no substantial compliance with the requirements of the statutes concerning the execution, publication and attestation of will. On the other hand, Mr. Mauntel gave testimony of a substance tending to show a substantial compliance with the law concerning the execution, publication and attestation of the will,

and that Theodore Wagner had testamentary capacity at the time. Other witnesses called by the proponents gave testimony tending to show that Theodore Wagner was possessed of testamentary capacity before and after May 5, 1951.

It is argued the testimony of Dr. Ensor and Mrs. Roots is discredited in the fact that their signing of the instrument after Wagner had signed was of the effect to declare the testator was mentally capable of making a will, contrary to the said witnesses' presently sworn statements of opinion of the then incompetency of the testator. On the premise that the testimony of these witnesses as to testamentary incapacity is entitled to little weight, and on a premise that a presumption of sanity accompanies every person, and that a presumption of testamentary capacity of the testator arises from a signed instrument of terms not unnatural and which reflects an observance of the statutory requirements as to the execution of a will, and with consideration to the testimony of the several witnesses who gave their opinion that Wagner was competent on May 5, 1951, it is argued the finding of the trial court that Wagner did not then have testamentary capacity is clearly against the weight of the evidence.

It is noted that the witnesses, Dr. Ensor and Mrs. Roots each testified that they signed the instrument on May 5, 1951, as a mere perfunctory act of witnessing the signature of Theodore Wagner; that neither read any part of the instrument and no part of it was read in their presence.

█ It is not asserted, and it may not properly be asserted, that there are legal grounds which compel the exclusion of the testimony of a witness that a testator was mentally incapacitated, merely because the witness had signed his name to an instrument proffered as the testator's will. In other words, as a matter of law such testimony is not to be wholly disregarded on account of the mere fact the witness had signed the proffered will. Such testimony, like other testimony, may be received with consideration to the background and demeanor of the witness. Obviously, when

there is acceptable direct evidence on a point, presumptions are not to be indulged.

█ To read the record of the oral testimony received in a case and to determine therefrom whether such testimony is true or false is not practical, and, generally, in an appealed case we must rely on the trial judge's determination as to the credibility of the witnesses, and as to the weight and value to be given their testimony. In this view, and upon examination of the record herein, we are persuaded the trial court's finding of lack of testamentary capacity of Theodore Wagner is sustained by the weight of the evidence. With this conclusion it is unnecessary to here comment on the further finding that the will was not executed in compliance with the law.

The contest of a will is a matter of equitable cognizance and the findings and judgment of the trial court will not be reversed on appeal unless the same are clearly against the weight of the evidence. In re Felgar's Estate, supra.

█ The proponents assert the trial court erred in overruling proponents' demurrer to the evidence of contestants for the reason that no predicate or showing was made that such evidence so offered by contestants was discovered after probate as is required in statute.

The record reflects that contestants timely filed petition alleging that testator was not competent, and that evidence thereof was discovered since the probate of will. There is no question that the petition meets the requirements of the statute, 58 O.S.1951 § 61, for an interested party to contest a will after its admittance to probate.

The record reflects that contestants relied on the testimony of Dr. Ensor to show that the testator was not competent, and that Dr. Ensor was not present and was out of the state at the time the will was presented for probate. Thus an inference is clearly presented that such evidence as derived from Dr. Ensor's testimony was not discovered by the contestants until after probate. We find no merit in the proponents' assertion of error of the trial

court in overruling the demurrer to the contestants' evidence.

The judgment of the trial court is affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, ARNOLD, BLACKBIRD and JACKSON, JJ., concur.

HALLEY, J., dissents for the reason that in his opinion the finding and judgment of the Trial Court is clearly against the weight of the evidence.