Evelyn WINN, Rudolph Dolezal and Edward Dolezal, also known as Frank Dolezal, Jr., Plaintiffs in Error,

v.

Fred DOLEZAL, as Executor of the last Will and Testament of Frank Dolezal, Deceased; Fred Dolezal, individually, Emil Dolezal; and Charles Dolezal, Defendants in Error.

No. 38124.

Supreme Court of Oklahoma.

July 6, 1960.

As Amended July 11, 1960.

Rehearing Denied Oct. 4, 1960.

Virgil M. Shaw, El Reno, Bulla, Melone, Meister & Sheehan, Oklahoma City, and Louis H. Roth, Jamaica, N. Y., for plaintiffs in error.

R. J. Kintz, Yukon, and Porta & Weaver, El Reno, for defendants in error.

PER CURIAM.

Frank Dolezal died testate and his will was admitted to probate. Within the time allowed by statute, Evelyn Winn, Rudolph Dolezal and Edward Dolezal contested the will on the ground that the testator was, at the time of the execution of the will, laboring under the insane delusion that they (the contestants) were not his children. The County Court denied the contest. On appeal to the District Court, where the matter was heard de novo, the contest was denied. After a motion for a new trial was overruled, the contestants perfected this appeal.

Frank Dolezal died on June 20, 1955, and the will under contest was executed by him on November 17, 1953. That portion of the will material to the issues involved, is:

"(2) To Evelyn Winn, Rudolph Dolezal, and Edward Dolezal, the children of my former wife Frances Dolezal, we being now divorced for many years, I give and bequeath the sum of Five ($5.00) Dollars each, and said above named children are to receive nothing further from my estate; *said children were born to my said former wife during the time that I and she were husband and wife, but which said children I am not the father of and do not acknowledge either of them as being my children;* however in any event said above named children are to be fully bound by the above provisions herein made for them, and in the event they are either of them, should attempt to contest this Will or the provisions so

made for them, then and in that event said contesting person or persons shall receive nothing from my estate.

"(3) All of the rest, residue and remainder of my property, both real and personal, of every kind, and wheresoever situated, whether vested or contingent at the time of my death, I devise and bequeath to my brothers, Fred Dolezal, Emil Dolezal, and Charles Dolezal, equally, share and share alike."

The trial court found, inter alia, that the testator left the above will and in considering that portion relating to the parenthood of the contestants found that "based upon all of the evidence in this case the conclusion arrived at by the said Frank Dolezal, and as reflected in his will above referred to, was not a spontaneous conclusion. That under the evidence in this case there were actual facts relied upon by the testator which caused him to enter upon a process of reasoning, and constituted a rational basis for his conclusion as reflected in the will, and that therefore the testator was not at the time of the execution of the will laboring under any insane delusion, and therefore under the evidence presented the testator had general testamentary capacity.

The contestants contend the trial court erred in failing and refusing to find that testator was laboring under an insane delusion that contestants were not his children when he executed his will; erred in refusing to find as a fact that contestants were in fact the natural and legitimate children of testator; and that the findings of fact and the judgment of the trial court were against the clear weight of evidence and, in fact, not supported by any evidence at all.

The contestants do not contend that testator did not have the capacity to make the will, or was of unsound mind, or incapable of knowing what he was doing, or was incompetent to manage and control his property. The only basis for contesting the will is that testator was laboring under an insane delusion that contestants were not his children when he executed his will.

An insane delusion may exist notwithstanding full mental capacity in other respects and the test as to validity of a will when contested upon the ground that testator was laboring under an insane delusion is not whether testator had general testamentary capacity, but whether an insane delusion materially affected the will. An insane delusion is a belief in things which do not exist, and which no rational mind would believe to exist. The essence of an insane delusion is that it has no basis in reason, cannot be dispelled by reason, and can be accounted for only as the product of mental disorder. In In re Robertson's Estate, 199 Okl. 582, 189 P.2d 615, 618, we quoted with approval In re Klein's Estate, 28 Wash.2d 456, 183 P.2d 518, wherein it is stated:

"An 'insane delusion', within rule invalidating will, denotes a false belief, which would be incredible in the same circumstance to victim thereof were he of sound mind and from which he cannot be dissuaded by any evidence or argument."

In the case of In re Elston's Estate, Okl. 262 P.2d 148, we held:

"Where a belief, religious or otherwise, is a creation purely of the imagination, it may be evidence of, or constitute, an insane delusion, but where it is based upon evidence and arrived at through a process of reasoning, though such reasoning may be regarded by the majority of other persons as faulty and illogical, yet, if it is not so contrary to reason that none but a person of unsound mind could entertain it, it is not such a delusion as may be deemed an 'insane delusion'; and though a testator's practical disinheritance of some of his children may have been prompted or brought about by such a belief, such fact, in itself, and without evidence of mental derangement or unbalance in other phases of life or demeanor will not invalidate the will."

The question then, is not whether the contestants are the natural or legitimate

children of testator, but whether the testator had any basis for his reasoning that he was not their father and such reasoning would be incredible to someone of a sound mind or so contrary to reason that none but a person of unsound mind could entertain it. Therefore, the presumption of legitimacy of children born in wedlock as provided by Title 10 O.S.1951 § 1, is not applicable in considering the issues. involved.

In considering this question, we find the testator, Frank Dolezal, came to what is now known as Comanche County, Oklahoma, from Kansas in 1901, and purchased a relinquishment of a claim to a farm. In 1903, he returned to Kansas during the wheat harvest and on November 3, 1903, married the mother of the contestants and they returned to his farm in Comanche County to live.

On December 8, 1903, the oldest of the contestants was born. Subsequently, three more children were born, the youngest being born in November, 1915. One son, Clarence, who will be specifically referred to, died several years prior to the execution of the will in controversy. In April, 1917, testator and his wife were divorced and the decree ordered testator to pay his wife a certain sum of money, custody of the children was granted to the wife and the testator was expressly "released and relieved of the expense and support of the children; the same to be borne by the plaintiff (wife)."

Testator and his wife lived together from the date of the marriage to a short time before the divorce in 1917, with the exception of a short time in late 1903 or early 1904. Proponents of the will produced testimony that one Clarence Lipsett lived across the road from testator and his wife; that he hauled water from testator's well and that his wagon and team were seen there almost daily; there were times when Mr. Lipsett could not be seen, although the wagon and team were there. The testimony also disclosed that a few days after the divorce testator had stated he found Lipsett in bed with his wife and he kicked her out and the divorce followed. There was also testimony that testator had stated his wife told him at the time of the divorce that Rudolph, Edward and Evelyn (the contestants) were not his children, but that Clarence was the only child fathered by him.

Shortly after the divorce, Lipsett, Mrs. Dolezal and the children left Comanche County in a covered wagon. Mrs. Dolezal and Lipsett later married in Texas and with the children moved to a farm in Oklahoma.

Contestants introduced testimony that they were born into the home of testator and his wife during the time they were married; that Rudolph had a birth certificate showing testator was his father; that on a visit to his father's room in his (Edward's) brother's (Clarence's) home, testator addressed Edward as "Son Edward", and that on her visit to Lawton in 1930 testator introduced Evelyn as his "Daughter Evelyn". However, with the exception of Clarence, now deceased, who subsequently returned to Lawton and lived with his father, the children had virtually no personal contact with their father after the divorce. The daughter, Evelyn Winn, did testify to having visited her father for a few days in 1930, and testified that she visited him whenever she was in Oklahoma City, where he lived for several years.

Of all the children born to testator, Clarence is the only one recognized by testator as his son. He provided Clarence with an education and was living in his home at the time that Clarence died and continued to live with Clarence's widow. Testator did not contribute to the support of any of the contestants after the divorce, although financially able to do so. The testator did not treat them as his children and the contestants did not treat him as their father.

In short, the evidence clearly and unequivocally establishes that the relationship between the contestants and the testator was far from the normal relationship or association of that of a father and his children.

■　Whether or not testator was laboring under an insane delusion that con-

testants were not his children is a question of fact. It is significant to note the County Judge in the original contest and the District Judge on hearing the contest de novo had the opportunity of observing and studying the witnesses on the stand; their candor or lack thereof; their apparent bias or prejudice and their general demeanor. Both found and by their judgments held the testator was not laboring under an insane delusion The District Court found "by a preponderance of evidence" there were actual facts relied upon by the testator which caused him to enter upon a process of reasoning, and constituted rational basis for his conclusion that they were not his children. In In re Feglar's Estate, 207 Okl. 310, 249 P.2d 455, we held:

> "The contest of a will is a matter of equitable cognizance and the findings and judgment of the trial court will not be reversed on appeal unless the same are clearly against the weight of the evidence."

See also In re King's Estate, 202 Okl. 334, 213 P.2d 844; and Wheeler v. Wade, 172 Okl. 365, 45 P.2d 66.

In reviewing the evidence, we do not find the findings and judgment of the trial court are clearly against the weight of evidence, and so hold.

Judgment affirmed.

DAVISON, C. J., and JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.

WILLIAMS, V. C. J., and WELCH and HALLEY, JJ., dissent.

WILLIAMS, Vice Chief Justice (dissenting).

The majority has approved the finding by the trial court of effect that testator was justified in publishing to the world in his will for all time that contestants were not his children.

In my view the only admissible testimony of rational basis for testator's belief that Rudolph, Edward and Evelyn were not his children was that Lipsett most every day for years got water at testator's farm home, leaving his team standing hitched to the wagon; that the physical appearance of the children was not similar to testator's; that there was no close family relationship between Dolezal and his children after his wife divorced him; that, as to Rudolph, the elder of the children, his birth occurred 35 days after the marriage of his parents.

Proponents did produce two former neighbors who said Dolezal told that Dolezal caught Lipsett in bed with his wife and kicked her out.

The attorney who drew the will testified Dolezal told him that Mrs. Dolezal told Dolezal that none of the children were his.

But the facts remain that Dolezal lived with his wife some fourteen years after the first child was born. And any discovery he made did not occur until immediately before the separation and divorce at which time the younger child was some two years old.

There is no admissible evidence to show that Mrs. Dolezal ever had illicit relations with Lipsett prior to the trouble immediately culminating with the divorce.

That there might have been opportunity had she been of a criminal mind, did not warrant testator in assuming actuality.

In Kaven's Estate, 279 Mich. 334, 272 N.W. 696, 698, the court said:

> "We are not in accord with appellee's contention that because there is testimony from which it may be inferred that Dr. Kaven had an opportunity to indulge in immoral conduct, if he saw fit, therefore it may be reasonably inferred he was guilty of such misconduct and hence there was some foundation in fact for the erroneous belief of the testatrix. * * *"

Assuming for the moment that testator's wife told him none of the children were his, such statement might well have been induced by duress, or by his cruelty, or might have been a reckless overstatement

made at the time, if he in fact did find her in a compromising situation.

That he had more regard for property values than human values was well demonstrated in his turning the children out of his home and for the wife to rear without help from himself and again by his having told a neighbor that because she spent too much for clothes he was not leaving anything to his daughter-in-law, the one in whose home he lived while her husband (his son) lived and in whose home he continued to live after the son's death, so that her mother had to come and live with her, and in whose house he continued to live even after she had re-married, and even after she had removed from Oklahoma City to Canadian County.

Apropos at this point, I feel, is a statement made in In re Russell's Estate, 189 Cal. 759, 210 P. 249, 254. The Supreme Court of California there said:

"Evidence that the testator, in his later years, told this story to several persons was competent for the purpose of proving that he then believed such to be the fact, but it is pure hearsay and wholly valueless for the purpose of proving that such an incident had in fact occurred. This story as told by the testator may have been either a delusion or an insane delusion, or it may have been true, or it may have been a plain falsehood. The conclusion that it was a falsehood is rebutted by the presumption of honesty, which is but an application of the presumption 'that a person is innocent of crime or wrong.' The conclusion that it was true is rebutted by the presumption of chastity, which is but another application of the same basic presumption of innocence. This leaves open only the conclusion that it was either a delusion, that is to say, a fixed belief that a thing is true which is not true, or which is not true in the manner in which it is believed, or an insane delusion, that is to say, such a belief entertained without any basis in reason or evidence and adhered to .

against reason and evidence. At any rate there is no basis at all in the evidence for a conclusion that any such incident as related by the testator ever occurred."

I respectfully dissent.